**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VAUGHN MILLER, | : | |
| | : | |
| Plaintiff, | : | **AMENDED** |
| | : | **OPINION** |
| v. | : | |
| | : | Civil Action No. 05-2023 (WHW) |
| CITY OF EAST ORANGE, EAST ORANGE | : | |
| POLICE DEPARTMENT, CHARLES | : | |
| GRIMES, individually and in his capacity as | : | |
| Chief of Police, LT. PAUL DAVIS, | : | |
| individually and in his capacity as an | : | |
| Investigator with the Essex County | : | |
| Prosecutor's Office, | : | |
| Defendants. | | |

**Walls, Senior District Judge**

Defendants City of East Orange and East Orange Police Department (the "East Orange Defendants") move for summary judgment pursuant to Fed. R. Civ. P. 56. Defendant Charles Grimes moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment. Pursuant to Fed. R. Civ. P. 78, defendants' motions are decided without oral argument. The East Orange Defendants' motion is granted. Defendant Grimes' motion is denied.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Vaughn Miller and his company VLEM Enterprises provided various computer services to the East Orange Police Department over a number of years. In 2001, the plaintiff, through VLEM, submitted a proposal and was awarded a contract to procure software licenses for the Police Department's computer backup system. According to the plaintiff, Defendant

FOR PUBLICATION

Chief of Police Charles Grimes signed all the appropriate documentation related to this work. During the course of his work for the Department, the plaintiff worked with East Orange Police Officer Norman Price.

In 2003, John Foti, an investigator with the Essex County Prosecutor's Office, and Defendant Lieutenant Paul Davis, an East Orange Police officer, began an investigation into the conduct of Officer Price and Plaintiff Miller. Plaintiff argues that this investigation was motivated by personal animus. As a result of the investigation, in January 2004, Officer Norman Price, his wife Natasha Price, and Plaintiff Miller were indicted by a grand jury in Essex County. The charge against Miller was that he had received payment for goods not authorized or received by East Orange. The charges against the Prices were that they had operated "shell" companies designed to defraud the City of East Orange. One of the companies that was alleged to have performed illegal activities was VLEM Enterprises.

Plaintiff alleges that Defendants Grimes and Davis testified falsely before the grand jury and as a result of this false testimony he was wrongly indicted. Defendant Grimes' testimony, as it related to Miller and his company VLEM Enterprises, consisted of the following exchange. In response to the question: "And VLEM is another company. You never signed anything for V-L-E-M, did you?" Grimes responded: "Not that I can recall, sir." (Tr. Grand Jury Hr'g 73:21-23, Dec. 16, 2003; Grimes Ex. 2.) Plaintiff also alleges that Defendant Davis testified falsely when he stated that Chief Grimes did not authorize VLEM to be a vendor and that East Orange did not have the product for which it paid VLEM.

-2-

FOR PUBLICATION

Plaintiff further alleges that following the Indictment he was offered a plea deal by Assistant Prosecutor Bradley.  Under the agreement, he contends, he could have pled guilty to disorderly conduct on the condition that he did not testify truthfully on behalf on Norman Price.  Plaintiff rejected the deal and now argues that this was an attempt to suppress his constitutionally protected right to free speech under the threat of continuing indictment.  On April 11, 2005, the Indictment was dismissed and a Superceding Indictment, naming only Norman and Natasha Price, was returned the following day.

A few days after the Indictment against him was dismissed, on April 15, 2005, the plaintiff brought this civil action alleging a variety of federal constitutional, state constitutional and state law claims[1] against the Chief of Police Charles Grimes, Lieutenant Paul Davis, and Investigator John Foti.[2]  In addition to the claims against the individual defendants, the plaintiff alleges that the City of East Orange is liable for the actions of these individuals under "agency principles" and because their conduct "constituted and was taken pursuant to official City policy,

---

[1] The First Count of the Complaint alleges that the defendants violated the plaintiff's Fourteenth Amendment due process rights as well as his rights under the New Jersey Constitution.  The Third Count, brought under 42 U.S.C. § 1983, alleges violations of his Fourth Amendment rights.  The Fourth Count alleges that the defendants are liable pursuant to 42 U.S.C. § 1985(2).  The Fifth Count alleges that the defendants violated 42 U.S.C. § 1986.  The Sixth Count alleges that the defendants' conduct constituted malicious prosecution and abuse of process in violation of his "Federal Civil Rights" and New Jersey common law and that the defendants are liable pursuant to 42 U.S.C. § 1983 and New Jersey common law.  The Seventh Count alleges intentional infliction of emotional distress.  The Eighth Count alleges "an invasion of Plaintiff's privacy (intrusion upon seclusion), of Plaintiff's private life and publicity placing Plaintiff in a false light."  The Ninth Count alleges that the defendants' conduct resulted in suppression of his free speech in violation of the First Amendment.

[2] On July 26, 2005, a stipulation of dismissal without prejudice was entered as to Defendant Foti.

**FOR PUBLICATION**

practice and custom under the Color of Law." (Compl. Count Two.) The East Orange Police

Department is also named as a defendant in this matter, however none of the Counts of the

Complaint specifically names the East Orange Police Department.

Plaintiff alleges that as a result of being falsely indicted, from January 2004 through April

12, 2005, he lived under the day-to-day stress of and carried the stigma of the criminal

indictment. He also alleges that the criminal indictment forced him to incur legal costs and

placed his job status in jeopardy.

For purposes of this summary judgment motion only, the East Orange Defendants accept

the factual allegations set out in plaintiff's complaint. Specifically, they concede that 1) Miller's

company VLEM sold and delivered licenses to the East Orange Police Department for which

VLEM was paid the proper cost; 2) Miller can establish that Grimes and Davis conspired to

perpetrate false testimony before the grand jury; and 3) Grimes and Davis did in fact testify

falsely before the grand jury. (East Orange Mot. 8.) Defendant Grimes, on the other hand, does

not accept these concessions and disputes that he testified falsely before the grand jury. The East

Orange Defendants also accept as true, for purposes of this motion only, the plaintiff's response

to Interrogatory Number 27 in which he identified the following basis for his claim that the

actions of the individual defendants were pursuant to official City policy: "The Chief of Police is

the policy maker for the East Orange Police Department. He was involved in the investigation

and lied before the Grand Jury. He knew I provided the equipment because he asked me to do so

and was present when I installed same and instructed individuals how to use." (Ferentz

Certification Ex. D.)

**FOR PUBLICATION**

  **LEGAL STANDARD**

  Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only the existence of a genuine and material factual dispute between the parties will defeat a motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  Id. at 248.  The moving party must show that if the evidentiary material of record was reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 318 (1986).

  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor.  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

  At the summary judgment stage the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  In doing so, the Court must construe the facts and inferences in

FOR PUBLICATION

the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir.

2002).

DISCUSSION

I.    The City of East Orange

In Monell v. Department of Social Services, the Supreme Court rejected the proposition

that a municipality could be held liable "*solely* because it employs a tortfeaser" and concluded

that a "municipality cannot be held liable under §1983 on *respondeat superior* theory." 426 U.S.

658, 691 (1978).  A municipality may only be liable for the constitutional torts of its employees

in one of three ways:

> First, the municipality will be liable if its employee acted pursuant to a formal
> government policy or a standard operating procedure long accepted within the
> government entity, Jett v. Dallas Independent School Dist., 491 U.S. 701, 737
> (1989); second, liability will attach when the individual has policy making
> authority rendering his or her behavior an act of official government policy,
> Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); third, the
> municipality will be liable if an official with authority has ratified the
> unconstitutional actions of a subordinate, rendering such behavior official for
> liability purposes. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).  Plaintiff's first theory that the City is

liable for the acts of the individual defendants under "agency theory" was clearly rejected by the

Court in Monell.  Plaintiff's second theory–that the City is liable because Chief Grimes was

acting as a City policymaker when he perjured himself before the grand jury and violated

Plaintiff's constitutional rights–requires further examination.

As an initial matter, contrary to the East Orange Defendants' arguments, conspiring to

provide and providing false testimony before the grand jury not only is a state criminal violation

-6-

**FOR PUBLICATION**

but also may serve as the basis of a constitutional violation.  See, e.g., Knight v. Poritz, 157 Fed. Appx. 481, 487 (3d Cir. 2005)(alleging constitutional violations resulting from false grand jury testimony by investigator); Palma v. Atlantic County, 53 F. Supp. 2d 743, 756-58 (D.N.J. 1999)(false testimony by police officer before the grand jury serving as a basis for violations of Fourth Amendment).

"[A]n official with policymaking authority can create official policy, even by rendering a single decision." McGreevy, 413 F.3d at 368; see also Bartholomew v. Fischl, 782 F.2d 1148, 1154 (3d. Cir. 1986).  However "not every decision by municipal officers automatically subjects the municipality to §1983 liability. . . . [M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur, 475 U.S. at 481-83.  This requires a two-part determination.  First, "whether a particular official has 'final policy making authority' [which] is a question of *state law*." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).  Second, whether the action was "taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business." Id.

The first part of this inquiry is simple, as the parties have conceded, for purposes of this motion, that Chief Grimes was a policymaker for the East Orange Police Department.[3]  However,

_____

[3] This determination is consistent with caselaw that has examined New Jersey law as to the policymaking authority of a chief of police. See, e.g., Hernandez v. Borough of Palisades Park Police Dep't, 58 Fed. Appx. 909, 913 (3d Cir. 2003) (finding police chief to be relevant policymaker with respect to actions of police officers); Black v. Stephens, 662 F.2d 181, 191 (3d Cir. 1981)(finding police chief to be policymaker with respect to police department disciplinary

**FOR PUBLICATION**

the fact that Grimes is a policymaker for some purposes, does not mean that all acts committed by Grimes fall within the scope of his final decision-making authority and are City "policy." See Wooten v. Logan, 92 Fed. Appx. 143, 146-47 (6th Cir. 2004)(holding that while sheriff was "final policymaker with regard to enforcement of the law . . . . a felonious act [statutory rape during the course of a traffic stop] cannot conceivably be characterized as exercising a power to set policy, " therefore the city was not liable); Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996)(holding that when police chief sexually harassed and discriminated against a police department employee he "was committing private, rather than public acts," therefore the city was not liable for his acts); Starrett v. Wadley, 876 F.2d 808, 819-20 (10th Cir. 1989)(same); Doe v. City of Waterbury, 453 F. Supp. 2d 537, 543-46 (D. Conn. 2006)(holding that municipality was not liable for sexual abuse of minors committed by mayor because, even though mayor was final policymaker in areas of law enforcement, safety, and social issues, his acts exceeded the bounds of the authority granted him); Travis v. Village of Dobbs Ferry, 355 F. Supp. 2d 740, 755 (S.D.N.Y. 2005)(holding that single incident of unconstitutional strip-search authorized by the police department's highest policymaker, the police chief, in violation of police procedure previously established by the chief, does not constitute policy rendering municipality liable).

Since the City of East Orange cannot be liable "*solely* because it employs a tortfeasor," Monell, 426 U.S. at 691, plaintiff can only prevail if he shows that somehow the City "was the

---

hearings); Glass v. Snellbaker, 05-cv-1971, 2007 WL 1723472 (D.N.J. June 14, 2007)(finding police chief to have policymaking authority over employment transfers within the police department); Holloway v. Whaley, 86-cv-3710, 1989 WL 22365 (D.N.J. Feb. 15, 1989)(finding the chief of police to be a city policymaker).

FOR PUBLICATION

moving force behind the injury alleged," <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997).  Plaintiff has made no allegation that there was a custom, pattern or official policy in the City for the police to lie, particularly when testifying under oath before a grand jury in order to obtain indictments.  Nor has he alleged that Chief of Police Grimes in his role as policymaker created a policy for the Police Department which instructed officers to obtain indictments through perjury.  The question is whether when Chief Grimes intentionally lied before the grand jury he was making "policy" for the City of East Orange.

The isolated incident at issue is an intentional tort and a criminal violation of New Jersey law, N.J.S.A 2C:28-1; N.J.S.A. 2C:228-2.  It is an act for which, if proven, Chief Grimes could be criminally prosecuted in state court.  While neither side has put forth any municipal or state laws setting out the limits of the policymaking authority granted to the East Orange Police Chief, clearly that authority includes an implicit limitation to abide by state and federal law.  When Chief Grimes committed this criminal act and lied before the grand jury, he was acting outside the scope of his policymaking authority for the City.  Since his act cannot be considered City policy, the City of East Orange is not liable for his conduct.  The City of East Orange's motion for summary judgement is granted.

## II.     <u>East Orange Police Department</u>

Plaintiff does not specifically name the East Orange Police Department in any of the Counts of the Complaint.  The Complaint also does not allege any conduct by the East Orange Police Department.  The only references to the East Orange Police Department are that it is part of the body politic of the City of East Orange (Compl. ¶ 3), that Defendants Grimes and Davis

**FOR PUBLICATION**

were members of the Department (Compl. ¶¶ 4,5), and that the plaintiff provided computer

services to the Department (Compl. ¶¶ 9, 12, 16).

As the plaintiff has alleged neither any wrongful conduct by the Department nor any basis

for holding the Department liable for the actions of its employees[4], the plaintiff has failed to

plead a cause of action against the Department of East Orange.  Summary judgement is granted

as to the East Orange Police Department.

**III.   Chief of Police Charles Grimes[5]**

*Falsity of Testimony Before the Grand Jury*

Defendant Grimes argues that his testimony before the grand jury is insufficient to

support plaintiff's claim that Grimes' false testimony before the grand jury led to the plaintiff's

wrongful indictment.  In essence, Grimes argues that his testimony as it related to Miller or his

company VLEM Enterprises consisted of merely one answer: "Not that I can recall, sir" in

---

[4] If plaintiff had intended to assert liability against the Department of East Orange on grounds of vicarious liability for the actions of Chief of Police Grimes, the argument would fail on the same grounds as it fails against the City of East Orange.  Additionally, while the defendants have not raised the issue, it should be noted that "police departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself." Hernandez v. Borough of Palisades Park Police Dep't, 58 Fed. Appx. 909, 912 (3d Cir. 2003).

[5] Defendant Grimes has brought a motion to dismiss, pursuant to Rule 12(b)(6) or in the alternative for summary judgment, pursuant to Rule 56.  Since the defendant relies on the transcript of his grand jury testimony and Plaintiff's deposition testimony in support of his motion, the Court will treat this as a summary judgment motion. See Washington v. Corr. Med. Servs., 05-cv-3715, 2006 WL 1210522 (D.N.J. 2006) ("When a party styles its motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment under Fed. R. Civ. P. 56, and attaches material outside the pleadings to its motion papers, a court has the discretion to accept the extraneous material and convert the motion into one for summary judgment.").  The standard for summary judgment is more demanding on the plaintiff than the standard for a motion to dismiss. See Serbin v. Consol. Rail Corp., 140 Fed. Appx. 336, 337 n.1 (3d Cir. 2005).

**FOR PUBLICATION**

response to whether he had ever signed anything for VLEM.  He argues that this evidence cannot support the allegation that he acted with malice and intentionally lied before the grand jury.  He also seems to suggest that this one statement about VLEM, not Vaughn Miller, in the context of the 112 total pages of grand jury testimony does not support the inference that his testimony led to plaintiff Miller's wrongful indictment.

Plaintiff Miller counters that Chief Grimes was very familiar with him and his company VLEM as a result of all of Miller's work at the police department.  Miller testified that he dealt directly with Grimes during the course of the bidding for the software licensing project.  (Miller Dep. Tr. 28:18-40:21, Sept. 7, 2005; Miller Ex. 1.)  He also testified about an earlier situation when Grimes directly asked Miller to install a video surveillance system in his office.  (Miller Dep. Tr. 73:9-77:12.)  Plaintiff also attaches as exhibits vouchers for payment to VLEM which bear Grimes' signature. (Miller Ex. 2.)  He argues that the fact that Grimes cleverly chose to respond "Not that I can recall, sir" rather than "yes" or "no" to the question does not shield his lies.

As Defendant Grimes has recognized, whether or not he intentionally lied before the grand jury or merely mis-remembered or mis-spoke is a fact that is central to the disposition of this case.  Plaintiff has presented sufficient evidence for the Court to conclude that it is a genuine issue of material fact which should be decided by a jury.  Defendant Grimes' motion for summary judgment is denied with respect to this issue.

*Sufficiency of Allegations of Emotional Distress Injury*

Defendant Grimes next argues that the plaintiff's claim for intentional infliction of emotional distress (Count 7) should be dismissed because the plaintiff has failed to present

FOR PUBLICATION

evidence of actual injury which is required by this Circuit in a §1983 case and has offered no

proof that Defendant Grimes was the direct and proximate cause of his emotional distress.

"The basic purpose of § 1983 damages is to compensate persons for injuries that are

caused by the deprivation of constitutional rights."  Memphis Cmty. School Dist. v. Stachura,

477 U.S. 299, 307 (1986).  In order to compensate the plaintiff fully for the injuries he has

suffered, he can recover "not only out-of-pocket loss and other monetary harms, but also such

injuries as impairment of reputation, personal humiliation and mental anguish and suffering."  Id.

There is no presumption that a constitutional violation caused the plaintiff distress; he must show

the "nature and circumstances of the wrong and its effect" on him.  Carey v. Piphus, 435 U.S.

247, 263 (1978).  However, there is also no requirement that "specific types of evidence be

introduced to demonstrate injury in the form of emotional distress."  Bolden v. Southeastern Pa.

Transp. Auth. v. Transp. Workers Union of Philadelphia, 21 F.3d 29, 35 (3d Cir. 1994).  Expert

medical testimony is not required.  Id. at 34.  Plaintiffs can present their own testimony and the

testimony of family members. Id. at 33; Pica v. Sarno, 907 F. Supp. 795, 804 (D.N.J. 1995).

Even the testimony of the plaintiff alone can be sufficient to support recovery for emotional

distress.  See Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1121-22 (3d Cir. 1988)(favorably citing

caselaw from other circuits in which evidence of emotional injury was presented through

testimony of the plaintiff); see also Smith v. Anchor Bridge Corp., 536 F.2d 231, 236 (8th Cir.

1976) (plaintiff's testimony that she was "embarrassed" and "really hurt and humiliated"

supported claim for emotional distress damages); Williams v. Trans-World Airlines, 660 F.2d

1267, 1273 (8th Cir. 1981) ("[P]laintiff's own testimony may be solely sufficient to establish

humiliation or mental distress.").

**FOR PUBLICATION**

Plaintiff testified that his neighbors were told that he had engaged in "shady work." (Miller Dep. Tr. 49:5-25.)  He testified that he lost the opportunity to work for IBM in Denver, Colorado because a background check revealed the Indictment. (Miller Dep. Tr. 14:10-15:2.)  He testified that he was unable to work in positions requiring higher security clearance because of the Indictment against him.  (Miller Dep. Tr. 15:3-21.)  He testified that he was "upset" (Miller Dep. Tr. 19:11), that he could not sleep (Miller Dep. Tr. 93:20-21), that his "name has been tainted" (Miller Dep. Tr. 19:25-20:1), that his reputation with his colleagues and community was damaged (Miller Dep. Tr. 90:23- 92:11), that a "wedge" was driven between him and his wife (Miller Dep. Tr. 90:13-20), and that his relationships with his father (Miller Dep. Tr. 92:11-17) and children (Miller Dep. Tr. 92:18-25) were damaged.

The role of the Court in a motion for summary judgment is not to weigh the evidence and determine whether the plaintiff will prevail and actually recover damages for emotional injuries. The Court merely determines whether the plaintiff has presented a question of material fact which needs to the decided by the jury.  The jury will determine whether the plaintiff's testimony is credible, if he has suffered actual injury which requires compensation and the amount of that compensation.  At this stage, the testimony of the plaintiff creates an issue of material fact. Defendant Grimes' motion for summary judgment is denied.

**FOR PUBLICATION**

**CONCLUSION**

For the preceding reasons, the East Orange Defendants' motion for summary judgment is granted and Defendant Grimes' motion to dismiss or, in the alternative, for summary judgment is denied.

**s/William H. Walls**
United States Senior District Judge

**Appearances**

Robert B. Woodruff
Kathryn J. Kingree
Algeier Woodruff, P.C.
60 Washington Street
Morristown, New Jersey 07960
　　　　　　　　Attorneys for Plaintiff

Carol A. Frentz
Greico, Oates & DeFilipp, LLC
414 Eagle Rock Avenue, Suite 200
West Orange, New Jersey 07052

　　　　　　　　Attorney for Defendants City of East Orange
　　　　　　　　and East Orange Police Department

Michael J. Parlavecchio
Mautone & Horan
500 Prospect Avenue
West Orange, New Jersey 07052

　　　　　　　　Attorney for Defendant Charles Grimes